UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| GINA R. ARWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:16-CV-652-DCP |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 15]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19]. Gina R. Arwood ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner"). For the reasons that follow, the Court will **GRANT** Plaintiff's motion and **DENY** the Commissioner's motion.

**I.     PROCEDURAL HISTORY**

On June 27, 2013, Plaintiff filed an application for disability insurance benefits and supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42 U.S.C. §§ 401-403, 1381-1385, claiming a period of disability that began on February 28, 2013. [Tr. 157-69]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 116]. A hearing was held on July 28, 2015. [Tr. 25-40]. On October 30, 2015, the ALJ found that Plaintiff was not disabled. [Tr. 9-18]. The Appeals

Council denied Plaintiff's request for review [Tr. 1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on November 9, 2016, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.     ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2018.
>
> 2. The claimant has not engaged in substantial gainful activity since February 28, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: arthritis in the left shoulder, degenerative disc disease of the lumbar spine, dermatitis, depression disorder, bipolar disorder, anxiety disorder, and obesity (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except she could concentrate for at least two hours at a time and could deal with change occasionally (up to one-third of the day).
>
> 6. The claimant is capable of performing past relevant work as a photo technician, cashier, and sales clerk. These jobs do not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and

416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, from February 28, 2013, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

[Tr. 9-18].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV. DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e) and 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

On appeal, Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ did not properly address or weigh a psychological evaluation performed by Mary Barker, M.S., a "Medical Evaluation Unit Decision" by the Tennessee Department of Human Services, or the medical opinions of the nonexamining state agency psychological consultants, Rebecca Joslin, Ed.D., and Jeffrey Bryan, Ph.D. [Doc. 17 at 4-8]. Plaintiff asserts that the medical evidence of record pertaining to her mental health treatment supports greater functional limitations than incorporated into the RFC, particularly those in social interaction, and that the ALJ relied on her own lay interpretation of the evidence. [*Id.* at 8-18]. The Court will consider each medical source in turn.

### A. Mary Barker, M.S.

Plaintiff maintains that the ALJ failed to adequately discuss or weigh the opinion of Mary Barker, MS, Senior Psychological Examiner ("Barker") to whom Plaintiff was referred for a

5

psychological evaluation on October 10, 2014, for the purpose of clarifying Plaintiff's diagnosis and to gain insight into her recent behavior. [Tr. 571-73].

Upon examination, Barker noted that Plaintiff had a long history of mental health treatment, beginning when she was in the third grade. [Tr. 572]. In addition, Plaintiff had a history of Bipolar II disorder and anxiety, hypomanic behavior, promiscuity, and difficulty parenting her three-year-old son, who was currently in the custody of his grandparents. [*Id.*]. Barker recorded that Plaintiff had two admissions to the Crisis Stabilization Unit within the past year, with one of the incidents a result of Plaintiff "spanking her son hard enough to leave welts." [*Id.*]. This particular incident, along with her having sex in a car while her son was present but asleep, resulted in Plaintiff losing custody of him. [*Id.*]. Barker further noted that Plaintiff "has been very slow in developing some adult skills that she would be expected to have by this point in her life." [*Id.*]. For example, Plaintiff did not obtain her driver's license until she was 23, she had always lived with her parents or grandparents, and "[s]he was taken in by an Internet scammer in her late teens who misrepresented himself and she ended up married to him briefly." [*Id.*].

Various psychologic testing was performed but did not show evidence of difficulty with reality testing or any psychotic process. [*Id.*]. Barker described Plaintiff as very vulnerable with poor self-esteem and difficulty identifying her feelings, communicating her needs to others, and figuring out what is going on around her in socially and emotionally complex situations. [Tr. 572-73]. Barker noted that Plaintiff's mood changed easily and she often felt anxious. [Tr. 573].

Barker's diagnostic impression was "Bipolar II Disorder, most recent episode depressed, moderate, [and] Dependent Traits." [*Id.*]. She concluded that Plaintiff had a history of poor judgment, particularly in social situations, which made it difficult for her to comprehend social cues and intentions of others. [*Id.*]. Her lack of understanding and bad experiences resulted in

confused feelings about relationships, leading to behavior that appeared impulsive and incomprehensible to others. [*Id.*]. Although Barker found Plaintiff did "not have a learning disorder per se, she has very poor comprehension of social situations, but there is not a diagnostic category into which she fits neatly." [*Id.*]. Recommended treatment included continued individual therapy where Plaintiff could learn to make basic social judgments and group therapy where she could learn to modulate her emotional reactions. [*Id.*]. Finally, Barker noted that Plaintiff "has not yet developed fully functioning adult cognitive skills, and needs a great deal of support to help her in her continued emotional development." [*Id.*].

In the ALJ's decision, the ALJ briefly summarized and addressed Plaintiff's mental health treatment records, which included Barker's evaluation, as follows:

> Mental status examinations also indicated benign findings including normal orientation, intact memory, and euthymic mood. On few examinations were . . . depressed mood observed. Even during the consultative psychological evaluation [with Barker], the Plaintiff demonstrated mental status within normal limitations. Mental function tests also showed no evidence of psychotic processes (2F, 5F, 9F, 12F, 14F, 15F, 17F, 20F, 22F-24F).

[Tr. 15].

Plaintiff complains that the ALJ merely referenced the evaluation without any discussion of Barker's findings and further erred by failing to assign Barker's evaluation any evidentiary weight. [Doc. 17 at 7]. Plaintiff submits that the ALJ's cursory discussion does not permit meaningful judicial review. [*Id.* at 7-8]. The Court agrees.

As a psychological examiner, Barker is considered an "other source" under the regulations. *See* 20 C.F.R. §§ 404.1513(d)(1) and 416.913(d)(1) (an other source includes medical sources who do not qualify as "acceptable medical sources" which are, generally, licensed physicians and psychologists). An other source may only offer evidence as to the severity of a claimant's

7

impairment. *Id.* at §§ 404.1513(d) and 416.913(d). An "opinion of a 'non-acceptable medical source' is not entitled to any particular weight or deference—the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record." *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015). Nonetheless, adjudicators must consider other source opinions and "generally should explain the weight given to the opinions . . . ." Soc. Sec. Rul. 06-03p, 2006 WL 2329939, *6 (Aug. 9, 2006). The balancing factors enumerated in 20 C.F.R. §§ 404.1527(c) and 416.927(c) for evaluating medical opinions from acceptable medical sources remain "basic principles that apply to the consideration" of other source evidence. *Id.* at *4-5. These factors include the length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. *Id.*

Here, the ALJ only mentioned. Barker's evaluation in a cursory manner, noting that Plaintiff "demonstrated mental status within normal limits" and testing did not show evidence of psychotic process. [Tr. 15]. Barker, however, did not assess or note mental status findings during the evaluation. For example, Barker did not comment on Plaintiff's presentation *during* the evaluation, such as the current status of her mood, memory, or judgment. And while testing did not show evidence of psychotic process, the ALJ's decision ignores what the evaluation did undercover—that is, a history of poor judgment, difficulty comprehending and interacting appropriately in social situations, and undeveloped adult cognitive skills. [Tr. 573]. Although the Court is mindful that Barker's evaluation is not entitled to any special deference as an other source opinion, the brevity in which the ALJ mentioned Barker's evaluation grossly understates the

8

clinical findings and impressions Barker actually assessed, and her evaluation certainly does not suggest normal mental status findings.

Furthermore, the ALJ did not identify the evidentiary weight the evaluation received. Given Social Security Ruling 06-03p's instruction that the balancing factors enumerated in 20 C.F.R. §§ 404.1527(c) and 416.927(c) should be applied in assessing the weight an other source opinion deserves, "it will rarely be enough for the commissioner to silently 'consider' the above-mentioned factors in deciding how much weight to give to an 'other source' who has seen the claimant in the source's professional capacity." *Estep v. Comm'r of Soc. Sec.*, No. 15-CV-10329, 2016 WL 1242360, at *3 (E.D. Mich. Mar. 30, 2016). The Commissioner argues that Barker's one-time evaluation fails to support greater limitations than those assessed by the ALJ when compared to the record evidence as a whole. [Doc. 19 at 13]. But as discussed in more detail below, the ALJ's cursory discussion of Plaintiff's mental health treatment records falls short of the substantial evidence standard and the explanatory requirements established by the regulations and case law. *See Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951) ("[S]ubstantiality of evidence must take into account whatever in the record fairly detracts from its weight.").

Accordingly, the Court finds Plaintiff's assignment of error well taken, and the Court will remand the case for the ALJ to reconsider Barker's evaluation, assign it a specific weight, and explain the reasons for the weight given.

> **B.** **"Medical Evaluation Unit Decision" by the Tennessee Department of Human Services**

Plaintiff complains that the ALJ also failed to mention or weigh the decision by the Tennessee Department of Human Services.

9

The Tennessee Department of Human Services Family Assistance completed a "Medical Evaluation Unit Decision" on April 10, 2014. [Tr. 460]. The form, which is categorized as a "Work Interruption" decision, appears to be a decision awarding temporary benefits and/or assistance to Plaintiff based on her diagnosis of Major Depressive Disorder and a secondary diagnosis of left hip pain. [*See id.*]. The department found Plaintiff's impairments substantially reduced or eliminated by her ability to support and/or care for her minor son, and because her impairment was expect to last at least 30 days, Plaintiff was found "Incapacitated." [*Id.*]. A registered nurse signed the decision and approved the claim for a period of six months. [*Id.*].

The Court observes that "[d]ecisions by any governmental or nongovernmental agency about whether or not you are disabled or blind" is evidence of a claimant's impairment that must be considered. 20 C.F.R. §§ 404.1512(b)(1)(v) and 416.912(b)(1)(v). Notwithstanding an adjudicator's obligation to consider this evidence, the Commissioner is not bound by such decisions. §§ 404.1504 and 416.904. Because another agency's decision is based on its own rules, the decision may be of little probative value in the context of social security cases where the Commissioner's decision is based on social security law. *Id.*; Soc. Sec. Rul. 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006). "However, the adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases." Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *7.

In the instant matter, the Court finds that the ALJ did not explicitly discuss the decision rendered by the Tennessee Department of Human Services. Nor does the ALJ's brief discussion of Plaintiff's mental health treatment suggest that the decision was even considered since it was not included in the exhibits that the ALJ collectively referenced in concluding that Plaintiff demonstrated normal mental status findings. At a minimum, the ALJ was required to consider the

decision, but nothing within the record suggests that was done. *See* 20 C.F.R. §§ 404.1512(b)(1)(v) and 416.912(b)(1)(v); Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *7. "An ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (internal quotation marks omitted)).

The Commissioner argues that the single-page decision provides no basis for remand because the decision does not provide any rationale for finding Plaintiff incapacitated. [Doc. 19 at 14]. The ALJ may likely agree with the Commissioner on remand, but because the ALJ failed to provide a more thorough and fair discussion of the mental health evidence, the Commissioner's argument fails to show that the error committed by the ALJ was harmless. *See Williams v. Comm'r of Soc. Sec.*, 227 F. App'x 463, 464 (6th Cir. 2007) ("[A] reviewing court, in assessing the decision of an administrative agency, must judge its propriety solely by the grounds invoked by the agency.") (citing *S.E.C. v. Chenery*, 332 U.S. 194, 196 (1947)).

Having already found that remand is appropriate in this case to reconsider Barker's opinion, the Court concludes that it is also appropriate for the ALJ to consider the decision by the Tennessee Department of Human Services on remand and "explain the consideration given to the decision." *See* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *7.

**C.    Nonexamining State Agency Psychological Consultants, Rebecca Joslin, Ed.D., and Jeffrey Bryant, Ph.D.**

Finally, Plaintiff submits that the ALJ did not give "good reason" for rejecting the opinions of the state agency psychological consultants. Plaintiff complains that the ALJ glazed over the mental health treatment records, failing to reconcile numerous treatment notes that undermine the ALJ's conclusion that mental status examinations generally produced benign findings and medication controlled her symptoms. [Doc. 17 at 12-15]. Plaintiff submits that the record, instead,

demonstrates that her mental impairments significantly impede her ability to function and perform substantial gainful activity. [*Id.*].

On August 27, 2013, at the initial level of the administrative proceedings, Dr. Joslin opined that Plaintiff was moderately limited in adaption such that she could only respond to infrequent changes in a work setting. [Tr. 51, 62]. At the reconsideration level, on January 7, 2014, Dr. Bryant assessed further limitations as follows: Plaintiff was moderately limited in understanding and remembering instructions in that she could understand and remember simple and detailed instructions but not multi-step detail or complex instructions; she was moderately limited in concentration and persistence—specifically in instances that involved attention and concentration for extended periods of time—working in coordination with or in proximity to others without being distracted by them, and completing a normal workday or workweek without interruption from psychologically based symptoms; she was moderately-to-markedly limited in social interaction in that she could relate with peers and supervisors in settings involving less than frequent interaction but could not work effectively with the general public and would work better with things rather than people; and she was moderately limited in adaption in that she could adapt to infrequent change, set limited goals, and travel in familiar locations. [Tr. 78-79, 94-96].

The ALJ assigned "little weight" to the foregoing opinions, finding that the state agency consultants overstated Plaintiff's limitations as mental status examinations generally indicated benign findings and that Plaintiff's symptoms were controlled with medication. [Tr. 16].[1]

---

[1] The Court notes that Dr. Joslin's opinion that Plaintiff could adapt to infrequent changes in the workplace appears consistent with the RFC determination in which the ALJ limited Plaintiff to change on an occasional basis (up to one-third of the day). [*Compare* Tr. 14 *with* Tr. 51]. Therefore, it appears to the Court that great weight was actually given to Dr. Joslin's opinion.

As an initial matter, the Court clarifies the standard by which a medical opinion from a nonexamining doctor is weighed. While Plaintiff suggests that the ALJ must give "good reasons" for the weight assigned to the opinions of the state agency psychological consultants, the Court finds that "good reasons" need only be given in explaining weight assigned to an opinion from a treating source. *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion*."); Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 397 (6th Cir. 2014) ("However, the 'good reasons' requirement 'only applies to treating sources.'") (quoting *Ealy v. Comm'r of Soc. Sec.,* 594 F.3d 504, 514 (6th Cir. 2010). A "treating source" is an acceptable medical source who provides, or has provided, medical treatment or evaluation to a claimant on an ongoing basis. §§ 404.1502 and 416.902. Here, Dr. Joslin and Dr. Bryant do not qualify as treating sources because neither doctor examined or had a treating relationship with Plaintiff. Thus, the "good reasons" requirement is inapplicable to their opinions.

Instead, opinions from nonexamining sources—that is, "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case," 20 C.F.R. §§ 404.1502 and 416.902—are weighed "based on the examining relationship (or lack thereof), specialization, consistency, and supportability." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)). While such medical sources are not due treating source deference, state agency consultants are highly qualified medical specialists who are also experts in social security disability evaluation and therefore their opinions must be considered. 20 C.F.R. §§ 404.1527(e)(2)(i) and 416.927(e)(2)(i).

Plaintiff does not deny that she experienced periods of improvement in her mental health but argues that the record largely detracts from the ALJ's generalized conclusion that Plaintiff's mental status examination findings were normal and her symptoms were controlled by medication, reasons cited by the ALJ for rejecting Dr. Joslin's and Dr. Bryant's opinions. The Court agrees. On many occasions, Plaintiff's medication required adjustment, her mood was noted as depressed and anxious, and in other instances Plaintiff exhibited poor status and functioning, insight, and judgment, as well as significant mood instability. [Tr. 371, 403, 408, 410, 416-17, 418-20, 431, 433, 446, 451-52, 461,464, 484-500, 514, 524, 615, 655-56]. Plaintiff was also admitted twice to the Crisis Stabilization Unit where she received inpatient care over the course of three to four days in January and August 2014. [Tr. 451-52, 484-500]. These instances were precipitated by Plaintiff presenting with increased behavior of hypomania, hypersexuality, including impulsive and dangerous sexual encounters, agitation and irritability, and tearfulness. [*Id.*].

The Commissioner counters by citing to competing mental health treatment records that purport to substantiate the ALJ's findings. [Doc. 19 at 4-8]. The Court is unpersuaded by the Commissioner's argument for several reasons. First, many of the medical records cited by the Commissioner were primarily for doctor visits regarding physical ailments and complaints rather than mental health treatment. [*See e.g.*, Tr. 286, 296, 299, 302, 407, 411, 414, 458, 466, 477, 481, 593, 598, 605)]. Therefore, the fact that Plaintiff was noted to demonstrate "appropriate mood and affect" during a May 15, 2014 medical appointment for complaints of gastroesophageal reflux disease [Tr. 479-81], for example, is hardly probative of Plaintiff's mental status and functioning. Second, the Commissioner's citation to competing treatment notes that document euthymic and appropriate mood, as well as good results with medication, only highlights the problem with the ALJ's decision. That is, a conflict in the evidence exists pertaining to the severity of Plaintiff's

mental health impairments and their limiting effect. The record includes 200 plus pages of mental health treatment records from Cherokee Health Systems where Plaintiff received care in the form on individual therapy, group therapy, medication management, and two admissions to the Crisis Stabilization Unit over a two year period. The ALJ's broad citation to mental health treatment records collectively, without any detailed discussion of the findings made therein, coupled with the ALJ's failure to adequately address Barker's opinion or consider the decision by the Tennessee Department of Human Services, prevents the Court from concluding that substantial evidence supports the ALJ's assignment of little weight to the limitations assessed by the nonexamining state agency consultants. *See McCarter v. Comm'r Soc. Sec.*, No. 3:16-CV-385-CCS, 2018 WL 327765, at *5 (E.D. Tenn. Jan. 8, 2018) ("Citing to a collection of exhibits that represents six years of mental health treatment without discussing any of the contents or the relevant and pertinent information found within, is not sufficient to demonstrate that they constitute substantial evidence to support the ALJ's decision to defer to some opinions while rejecting others."). It is the ALJ's responsibility, not the Commissioner's, to provide enough detail, discussion, and analysis of the evidence to make clear to subsequent reviewers how the ALJ reconciled inconsistent evidence and reached her conclusions. *See Pollard v. Astrue*, No. 1:11-CV-186, 2012 WL 2341814, at *5 (S.D. Ohio June 20, 2012) ("The ALJ must build an accurate and logical bridge between the evidence and his conclusion."), *adopted sub nom*., No. 1:11CV186, 2012 WL 2931310 (S.D. Ohio July 18, 2012).

Accordingly, Plaintiff's contention that substantial evidence does not support the weight assigned to Dr. Joslin's and Dr. Bryant's opinions is well taken, and the ALJ shall reconsider these opinions as well on remand.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **GRANTED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **DENIED**. This case will be **REMANDED** to the Social Security Administration with instructions that the ALJ: (1) reconsider and weigh Barker's evaluation, providing appropriate rationale with specific reference to the evidence of record in support of the weight assigned, (2) consider the decision by the Tennessee Department of Human Services and explain the consideration given to the decision, and (3) reconsider and weigh Dr. Joslin's and Dr. Bryant's opinions, providing appropriate rationale with specific reference to the evidence of record in support of the weight assigned.

ORDER ACCORDINGLY.

_____
Debra C. Poplin
United States Magistrate Judge